# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AK STEEL CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MECHEL NORTH AMERICA SALES )<br>CORPORATION f/k/a BLUESTONE )<br>COAL SALES CORPORATION and )<br>MECHEL BLUESTONE, INC., )<br>)<br>Defendants. )<br>------------------------------------------------------)<br>MECHEL NORTH AMERICA SALES )<br>CORPORATION f/k/a BLUESTONE )<br>COAL SALES CORPORATION and )<br>MECHEL BLUESTONE, INC., )<br>)<br>Counter-Claimants, )<br>)<br>v. )<br>)<br>AK STEEL CORPORATION, )<br>)<br>Counter-Defendant. ) | Case No: 1:14-cv-3286<br><br>Judge Ronald A. Guzmán |

## **ORDER**

For the reasons below, Plaintiff/Counter-Defendant AK Steel Corporation's motion for summary judgment [60] is granted and Defendants/Counter-Claimants Mechel North America Sales Corporation and Mechel Bluestone, Inc.'s motion for summary judgment [66] is granted. Both parties are eligible to recover reasonable attorney's fees, costs, and prejudgment interest, and the parties are directed to comply with the procedures in Local Rule 54.3(d) in an attempt to agree on their respective damages, including attorney's fees and costs and prejudgment interest. If the parties reach an agreement, they shall submit a proposed final judgment resolving this case

within sixty days of the date of this order. If the measure of fees, costs, and interest remains in dispute after following the required procedures, the parties shall prepare the joint statement required under Local Rule 54.3(e) within sixty days of the date of this order.

## **MEMORANDUM OPINION**

AK Steel Corporation ("AK")[1] brings this suit against Mechel North America Sales Corporation and Mechel Bluestone, Inc. (collectively, "Mechel"), claiming breach of contract involving payments required under a settlement agreement. (Second Am. Compl., Dkt. # 55.) Mechel brings a counterclaim against AK for breach of contract and unjust enrichment relating to payments under a coal delivery contract. (Answer and Countercl., Dkt. # 57.) This matter is before the Court on AK's Motion for Summary Judgment filed February 3, 2015, (Pl.'s Mot. Summ. J., Dkt. # 60) and Mechel's Motion for Summary Judgment filed February 24, 2015, (Def.'s Mot. Summ. J., Dkt. # 66).

For the reasons set forth below, both parties' motions for summary judgment are granted.

## **Facts**

The following facts are undisputed.

AK is a Delaware corporation that operates a manufacturing facility, and is the surviving entity of a September 16, 2014 merger between AK Steel Corporation and Severstal Dearborn, the original plaintiff in this case. (Pl.'s Stmt. Fact, Dkt. # 62, ¶¶ 10-11; Defs.' Stmt. Fact, Dkt. # 66-3, ¶ 4.) Mechel North America Sales Corporation and Mechel Bluestone, Inc. are both

---

[1] The original complaint in this suit was filed by Severstal Dearborn LLC, an entity which merged with AK Steel leaving AK Steel as the surviving entity. The parties do not dispute that through the merger AK acquired the rights and obligations of Severstal under the contracts at issue. For convenience, the Court may therefore refer to actions taken by Severstal as actions taken by AK.

Delaware corporations based in West Virginia. (Pl.'s Stmt. Fact, Dkt. # 62, ¶¶ 12-13.) In January 2013, Mechel and AK entered into a Confidential Settlement Agreement ("Settlement") relating to a multi-party Delaware state court lawsuit, *Indiana Harbor Coke Company, et al v Bluestone Coal Sales Corporation*, No. N10C-03-165-JAP. (*Id*. at ¶ 18.) The Settlement specified that any disputes arising under it would be governed by Illinois law and would be heard in the Northern District of Illinois. (*Id*. at ¶¶ 16-17.) The Settlement provides that the prevailing party is entitled to recover reasonable attorney's fees and costs incurred in prosecuting or defending an enforcement action under the terms of the Settlement. (*Id*. at ¶ 26; Defs.' Stmt. Fact, Dkt. # 66-3, ¶ 11.) As additional consideration for the Settlement, the parties contemporaneously entered into a Coal Supply Agreement under which AK agreed to buy its coal requirements from Mechel from January to December 2013. (Defs.' Stmt. Fact, Dkt. # 66-3, ¶¶ 8-10; Pl.'s Stmt. Fact, Dkt. # 62 at Ex. A, § 6(b)) The Coal Supply Agreement was attached to the Settlement as an exhibit. (Defs.' Stmt. Fact, Dkt. # 66-3, ¶¶ 8-10.) Under the terms of the Coal Supply Agreement, AK is obligated to pay for coal it receives within 30 days of the receipt of a proper invoice. (*Id*. at ¶ 16.)

Pursuant to the Settlement, Mechel agreed to make three scheduled payments to AK in exchange for a release of all claims asserted in the Delaware lawsuit. (Pl.'s Stmt. Fact, Dkt. # 62, ¶¶ 19-20.) Mechel made the first of these payments on time, but due to cashflow problems and payments due to other creditors failed to make the second payment of $4 million or the third payment of $3.2 million. (*Id*. at ¶¶ 21-23, 25.) AK purchased three shipments of coal in November and December of 2013 pursuant to the Coal Supply Agreement, but has not yet paid for any of the coal it received. (Defs.' Stmt. Fact, Dkt. # 66-3, ¶¶ 12-14.)

AK brought this action for breach of contract relating to the two missed payments under the Settlement, seeking $7.2 million plus pre-judgment interest, attorney's fees, and costs. (Second Am. Compl., Dkt. # 55.) Mechel responded by counterclaiming for breach of contract and unjust enrichment based on the coal shipments for which AK has not paid, seeking $1,999,501.35 plus attorney's fees and costs. (Answer and Countercl., Dkt. # 57.)

**Summary Judgment Standard**

A district court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute exists as to any material fact, a court must view all the evidence and draw all reasonable inferences in favor of the non-moving party. *See Weber v. Univ. Research Assoc., Inc*., 621 F.3d 589, 592 (7th Cir. 2010). It is not appropriate for the court to judge the credibility of the witnesses or evaluate the weight of the evidence; the only question on summary judgment is "whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only if the record, taken as a whole, establishes that no reasonable jury could find for the non-moving party. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004). However, the party opposing a summary judgment motion cannot rely on mere conclusions and allegations to create factual issues. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus*., 328 F.3d 309, 320 (7th Cir. 2003).

Here, both parties allege breach of contract. To prevail on a claim of breach of contract, a plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) plaintiff's

performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach." *Northbound Grp., Inc. v. Norvax, Inc.*, No. 11 C 6131, 2013 WL 6987185, at *7 (N.D. Ill. Dec. 3, 2013) (citing *Lindy Lu LLC v. Ill. Cent R.R. Co.*, 984 N.E.2d 1171, 1175 (Ill. App. Ct. 2013)).

## Discussion

The parties agree that the Settlement was a valid and enforceable contract, Mechel breached that contract by failing to pay AK $7.2 million, and successful enforcement of the Settlement in this action would entitle AK to recover attorney's fees and costs. Mechel does not contest liability for this breach, and summary judgment is therefore appropriate on AK's breach of contract claim in the amount of $7.2 million. AK also moves for an award of prejudgment interest under § 815 ILCS 205/2, which provides that creditors "shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." A valid written contract constitutes an "other instrument of writing" entitling the creditor to an award of prejudgment interest, provided the amount due under the contract is fixed and easily ascertainable. *See Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 628 (7th Cir. 2001). Accordingly, AK is entitled to prejudgment interest in the amount of 5% annually starting from the date of each missed settlement payment.

The parties also agree that the Coal Supply Agreement was valid and enforceable, and that AK received nearly $2 million worth of coal for which it has not paid. The only dispute therefore centers on the measure of damages to which AK is entitled for the breach of the Settlement. (Defs.' Mot. Summ. J., Dkt. # 66, at 4) ("Defendants do not dispute the allegations in

Plaintiff's Motion for Summary Judgment except for Plaintiff's claim that it has 'suffered damages in the amount of $7.2 million, plus interest and attorney's fees.'") Mechel disputes AK's damages only in that it argues such damages should be offset by the amount AK owes Mechel for coal shipments made under the Coal Supply Agreement. The parties agree that AK never paid for these shipments, but dispute whether AK's obligation to pay has yet arisen. If such obligation has in fact arisen, the Court must also decide the contested issue of whether the Settlement incorporates the Coal Supply Agreement such that the fee-shifting provision of the former applies to enforcement actions under the latter, entitling both parties (rather than only AK) to recover their fees and costs.

*AK's obligation under the Coal Supply Agreement*

Mechel's counterclaim alleges breach of contract[2] in that AK has received – but refused to pay for – $1,999,501.35 worth of coal under the Coal Supply Agreement, despite having received invoices for the coal shipments as required by the agreement. (Answer and Countercl., Dkt. # 57, ¶¶16, 19-20.)

Under the Coal Supply Agreement, AK agreed to purchase its monthly coal requirements from Mechel between January and December 2013, in the amount of approximately 8,500 tons per month to a maximum of 102,000 tons over the term of the contract. (Defs.' Mot. Summ. J., Dkt. # 66-1, at Ex. C, §§ 2.1, 3.1.) The base price of the coal was set at $100.00 per ton, with

---

[2] Mechel also raises a counterclaim for unjust enrichment based on the same conduct. Because the parties agree that the Coal Supply Agreement represents a valid and enforceable contract, however, remedies for unjust enrichment are unavailable to the parties. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant.") (citing *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005)); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) ("Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."). The Court therefore considers only Mechel's counterclaim for breach of contract.

adjustments permitted based on various quality standards not at issue here. (*Id*. at §§ 6.1-6.2.)

The payment provision of the agreement states:

> [Mechel] shall invoice [AK] for Coal at the time of shipment. [Mechel's] invoice shall reflect the purchase price for Coal as net of adjustments in Section 6.2. [AK] shall pay [Mechel] the Adjusted Price for Coal delivered by [Mechel] pursuant to this Agreement by wire transfer net thirty (30) days from receipt of a proper invoice.

(*Id*. at § 6.3.)

Mechel has submitted a declaration and copies of invoices showing that AK received both the coal shipments in question and the invoices required under the agreement. (Defs.' Mot. Summ. J., Dkt. # 66-2, at Exs. C-E.) AK does not deny having received either the coal or the invoices, and admits that it is obligated to pay for the coal. (*See* Pl.'s Resp., Dkt. # 68, at 6.) (stating that AK does "not dispute that under the Coal Supply Agreement, its predecessor had an obligation to pay for the three shipments of coal it received in late 2013" and admitting that "it is certainly likely that the amount that is due to Defendants is close to the amount they seek as a setoff.") Nor could it deny these facts, as Mechel has also offered into evidence December 2013 email communications between Mechel and AK's predecessor correcting miscalculations in the invoices. (Defs.' Mot. Summ. J., Dkt. # 66-2, at Ex. D.)

Notwithstanding these admissions, AK justifies its non-payment by asserting that it is not in default because "Defendants have not asserted or shown they ever issued a 'proper invoice' to [AK] pursuant to Paragraph 6.3 of the Coal Supply Agreement." (Pl.'s Resp., Dkt. # 68 at 6.) This argument appears to assign great weight to the seemingly inadvertent omission of the word "proper" from Mechel's declaration, as Mechel has both asserted and proven with unrebutted evidence that it issued invoices listing the quantity and purchase price of the coal. While a "proper invoice" is required under the Coal Supply Agreement, "proper" is not a defined term and AK has offered no evidence (and indeed, no argument) suggesting that the invoices it

received were in any way improper such that they failed to trigger AK's obligation to pay under the agreement. Accordingly, the record reflects that AK is in breach of the Coal Supply Agreement and Mechel's motion for summary judgment is granted. Mechel is entitled to $1,999,501.35, and this amount offsets AK's award of $7.2 million resulting in Mechel's net liability to AK totaling $5,200,498.65. Like AK, Mechel is also eligible for an award of prejudgment interest under § 815 ILCS 205/2 because the Coal Supply Agreement qualifies as a written instrument. *See Servbest Foods, Inc. v. Emessee Indus., Inc*., 403 N.E.2d 1, 13 (Ill. App. Ct. 1980) ("It has long been recognized in Illinois that a written contract for the sale of goods is a 'written instrument' within the meaning of the statute"). The fact that AK did not believe an obligation to pay for the coal had arisen is of no significance, as a good-faith dispute over a payment obligation does not eliminate eligibility for prejudgment interest. *See Krantz v. Chessick*, 668 N.E.2d 77, 80 (Ill. App. Ct. 1996) ("If the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment"). Accordingly, Mechel is entitled to prejudgment interest in the amount of 5% annually starting 30 days from the date of each invoice regarding coal shipments.

*Mechel's entitlement to attorney's fees and costs*

The amount of damages Mechel is entitled to under its breach of contract claim – and, therefore, the setoff that must be applied to the judgment in favor of AK – depends on whether an award of attorney's fees and costs is permitted for a breach of the Coal Supply Agreement. AK argues that fees and costs are unavailable to Mechel because while the Settlement contains a provision permitting the award of attorney's fees and costs to a prevailing party, the Coal Supply

Agreement contains no such provision. Mechel responds that recovery of fees and costs is available to it because the Coal Supply Agreement is incorporated into the Settlement.

In Illinois, the prevailing rule is that in the absence of statutory or contractual authority otherwise, a successful litigant may not recover attorney's fees or costs from the losing party. *See In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005) ("Illinois follows the American rule, under which attorney fees are not available unless the parties have agreed to them or a statute provides for them"). Indemnity and fee-shifting contracts are strictly construed, as the "well-settled bright line rule on this issue provides certainty in the law and parties are on notice to include precise language on attorney fees when negotiating a contract." *Downs v. Rosenthal Collins Grp., LLC*, 895 N.E.2d 1057, 1061 (Ill. App. Ct. 2008). As such, fees and costs are only available to Mechel if the Coal Supply Agreement is incorporated into the Settlement such that a breach of the former constitutes a breach of the latter, thereby permitting Mechel to seek an award of fees and costs under Paragraph 20 of the Settlement.

A contract incorporates a referenced document only when it demonstrates the parties' intent to make that document part of the contract itself. *See Golen v. Chamberlain Mfg. Corp.*, 487 N.E.2d 121, 126 (Ill. App. Ct. 1985). When determining whether something is incorporated into a contract, a court limits its inquiry to the four corners of the contract and the language of the internal reference itself. *See Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991) ("For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract"). If another document is incorporated, the additional provisions of that document become as much a part of the contract as if they were expressly written into it. *See Turner Const. Co. v. Midwest Curtainwalls, Inc.,* 543 N.E.2d 249, 251 (Ill. App. Ct. 1989).

> The Settlement clearly references the Coal Supply Agreement, stating:
>
> In additional consideration of this Agreement, [Mechel] and [AK] shall, concurrent with the execution of this Agreement, enter into the coal supply agreement attached hereto as Exhibit C.

(Pl.'s Stmt. Fact, Dkt. # 62 at Ex. A, § 6(b)) AK is correct that this provision does not unambiguously demonstrate an intent to incorporate all the terms of the Coal Supply Agreement, as it merely notes the existence of a separate agreement entered into as part of the consideration for the Settlement. This is not the only portion of the Settlement that mentions the Coal Supply Agreement, however. A court interpreting a contract under Illinois law does not examine each provision in isolation, but rather "review[s] each part in light of the others." *Wilson*, 577 N.E.2d at 1327. The Settlement contains a provision in which Mechel Mining (Mechel's parent corporation) guarantees Mechel's performance of its obligations "pursuant to the coal supply agreements entered into by the Parties *as part of* this Agreement." (Pl.'s Stmt. Fact, Dkt. # 62 at Ex. A, § 5(d)) (emphasis added). That the parties explicitly recognized the Coal Supply Agreement as *part* of the Settlement suggests that they intended to incorporate its terms. Similarly, the Settlement recites that:

> This Agreement, *including the exhibits attached hereto*, constitutes the entire agreement between the Parties and supersedes any prior agreements and understandings, oral and written, between the Parties hereto with respect to the subject matter hereof.

(*Id.* at § 13) (emphasis added). As the Coal Supply Agreement is attached as an exhibit to the Settlement, this clause makes clear that the Coal Supply Agreement was intended to merge with the Settlement as the complete expression of the parties' contractual obligations. Mechel is therefore entitled to move for an award of attorney's fees and costs under the Settlement for its successful enforcement of AK's obligation to pay for coal shipments.

**Conclusion**

For the reasons set forth above, Plaintiff/Counter-Defendant AK Steel Corporation's motion for summary judgment [60] is granted and Defendants/Counter-Claimants Mechel North America Sales Corporation and Mechel Bluestone, Inc.'s motion for summary judgment [66] is granted. Both parties are eligible to recover reasonable attorney's fees, costs, and prejudgment interest, and the parties are directed to comply with the procedures in Local Rule 54.3(d) in an attempt to agree on their respective damages, including attorney's fees and costs and prejudgment interest. If the parties reach an agreement, they shall submit a proposed final judgment resolving this case within sixty days of the date of this order. If the measure of fees, costs, and interest remains in dispute after following the required procedures, the parties shall prepare the joint statement required under Local Rule 54.3(e) within sixty days of the date of this order.

**Date**: April 24, 2015

_____
**Ronald A. Guzmán**
**United States District Judge**